IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>v.<br><br>PATRIOT COMPANY, INC.,<br><br>                  Defendant. | Case No. 17-00024-03-CR-W-HFS |

**PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, Stacey Perkins Rock, Assistant United States Attorney, and James Curt Bohling, Assistant United States Attorney, and the defendant, Patriot Company, Inc. (otherwise referred to as "PCI" or "the defendant"), represented by Melanie S. Morgan.

The defendant understands and agrees that this plea agreement is only between it and the United States Attorney's Office for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count One of the Indictment charging it with a violation of 18 U.S.C. § 1349, that is, conspiracy to commit wire fraud. By entering into this plea agreement, the defendant admits that it knowingly committed this offense, and is in fact guilty of this offense.

**3. Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which it is pleading guilty are as follows:

PCI was formed in 2005 in the state of Missouri as a SDVOSB with Paul R. Salavitch (Salavitch), an SDV, as the nominal owner. Neither PCI's long-term decision making nor its day-to-day operations were managed or controlled by the SDV. In fact, Jeffrey K. Wilson (Wilson), a minority PCI shareholder, managed and controlled PCI's day-to-day operations and long-term decision making between May 2005 and January 2014. Wilson was not a veteran. Wilson was the 100% owner and president of Corporation A, a construction company formed in 2000 and located in the Western District of Missouri.

PCI, through its agents, voluntarily and intentionally joined in a scheme to obtain at least $13,819,522.00 in approximately 20 federally funded contracts set aside for SDVOSBs or veteran owned small businesses (VOSBs) for work in approximately nine states by claiming that PCI was entitled to receive those contracts even though PCI, through its agents, knew it was not so entitled because the SDV did not manage or control the day-to-day operations of PCI. The Veterans Entrepreneurship and Small Business Development Act of 1999 established an annual government-wide goal of awarding contracts to at least three percent of the total value of all federal prime and subcontract awards for small businesses owned and controlled by SDVs. One of the requirements to obtain government contracts set aside for SDVOSBs was that the SDV must control the day-to-day management, daily operations, and long-term decision making of the SDVOSB.

The United States General Services Administration (GSA) housed database systems located outside the state of Missouri where contractors entered and certified details of their companies. The United States Department of Veterans Affairs (VA) requires prospective SDVOSBs, upon being tentatively awarded a contract, to complete and electronically submit a form to verify SDVOSB status. Government agency contracting offices rely on this information and these certifications to award set-aside contracts. Between 2005 and 2012, Wilson made approximately five certifications in the GSA-housed databases that PCI was eligible for SDVOSB and VOSB set-aside contracts even though he knew it was not. Between 2011 and 2012, Salavitch made approximately four certifications electronically of PCI's SDVOSB status to the VA. Between 2010 and 2013, Wilson signed more than 10 government set-aside contracts in which he represented that PCI was eligible for SDVOSB and VOSB set-aside contracts when he knew it was not.

In July 2011, Wilson received an email from the VA raising concerns that PCI was not a legitimate SDVOSB. In response, Wilson and Salavitch sent a letter to VA stating that as a corporate officer and owner of PCI, Wilson had authority to sign a recent contract. In September 2013, VA conducted an unannounced site visit of PCI. The site inspector discovered Salavitch was working 40 miles away at his full-time job as a federal employee at Leavenworth, Kansas. In December 2013, VA de-certified PCI as a SDVOSB.

As a result of the scheme PCI unlawfully obtained the following federal set-aside contracts, thereby depriving other SDVOSBs and VOSBs that bid on these contracts from obtaining them:

|   | Agency | Contract No. | Award | Award Date | City, State |
|---|--------|--------------|-------|------------|-------------|
| 1 | VA | VA263-RA-0650 | $264,712[1] | 9/24/2009 | Ft. Meade, SD |
| 2 | Army | W91151-10-C-0177 | $99,928 | 9/07/2010 | Fort Hood, TX |
| 3 | VA | VA263-C-1074 | $149,104[2] | 9/23/2010 | Omaha, NE |
| 4 | VA | VA256-C-1235 | $93,100 | 4/12/2011 | Muskogee, OK |
| 5 | VA | VA256-C-1237 | $111,269 | 4/12/2011 | Muskogee, OK |
| 6 | VA | VA251-C-1074 | $1,628,248[3] | 6/16/2011 | Battle Creek, MI |
| 7 | VA | VA256-C-1344 | $4,383,129[4] | 6/22/2011 | Oklahoma City, OK |
| 8 | VA | VA255-C-2136 | $180,972 | 9/14/2011 | Kansas City, MO |
| 9 | VA | VA255-C-2229 | $1,008,119 | 9/14/2011 | Kansas City, MO |
| 10 | VA | VA251-C-1103 | $153,440 | 12/15/2011 | Ft. Wayne, IN |
| 11 | VA | VA249-12-C-0089 | $689,881 | 1/24/2012 | Memphis, TN |
| 12 | VA | VA263-12-C-0172 | $281,821[5] | 6/28/2012 | Des Moines, IA |
| 13 | VA | VA786A-12-C-0033 | $25,439 | 8/1/2012 | Danville, IL |
| 14 | VA | VA263-13-C-0129 | $245,095[6] | 5/29/2013 | Des Moines, IA |
| 15 | VA | VA263-13-C-0155 | $775,069[7] | 6/26/2013 | Fargo, ND |
| 16 | VA | VA263-13-C-0177 | $415,850[8] | 6/27/2013 | Omaha, NE |
| 17 | VA | VA263-13-C-0208 | $78,735 | 7/24/2013 | Omaha, NE |
| 18 | VA | VA263-13-C-0210 | $321,876[9] | 7/29/2013 | Grand Island, NE |
| 19 | VA | VA263-13-C-0216 | $2,809,378[10] | 7/31/2013 | Iowa City, IA |
| 20 | VA | VA263-13-C-0281 | $104,357 | 9/30/2013 | Iowa City, IA |

---

[1] Original contract award: $238,341; four modifications resulted in chart award amount.

[2] Original contract award: $143,666; two modifications resulted in chart award amount.

[3] Original contract award: $1,324,000; four modifications resulted in chart award amount.

[4] Original contract award: $4,295,500; one modification resulted in chart award amount.

[5] Original contract award: $272,226; four modifications resulted in chart award amount.

[6] Original contract award: $185,137; seven modifications resulted in chart award amount.

[7] Original contract award: $770,651; three modifications resulted in chart award amount.

[8] Original contract award: $375,818; two modifications resulted in chart award amount.

[9] Original contract award: $312,000; one modification resulted in chart award amount.

[10] Original contract award: $2,527,709; eight modifications resulted in chart award amount.

| | | Total: | $13,819,522 | | |
|---|---|---|---|---|---|

None of the 20 federal set-aside contracts would have been awarded to PCI absent false representations that PCI was managed and controlled by the SDV.

**4. Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining its guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which it is pleading guilty.

**5. Statutory Penalties.** The defendant understands that upon its plea of guilty to Count One of the Indictment charging it with conspiracy to commit wire fraud, the minimum penalty the Court may impose is not less than one year of probation, while the maximum penalty the Court may impose is not more than five years of probation, a $500,000 fine, and a $400 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

4

      b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

      c. the defendant agrees to dissolve its corporate entity before the date of sentencing in this case, in which case, a fine and term of probation will be unnecessary; however, should the defendant corporation fail to dissolve prior to the date of sentencing, the Court may impose a fine, additionally, the Court may impose a term of probation which, if imposed, must be at least one year and not more than five years;

      d. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

      e. any sentence of imprisonment imposed by the Court will not allow for parole;

      f. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

      g. the defendant may not withdraw its guilty plea solely because of the nature or length of the sentence imposed by the Court.

**7. Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to PCI's fraud scheme for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney's Office for the Western District of Missouri agrees to dismiss Counts Two through Five at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney's Office for the Western District of Missouri has no knowledge.

5

Case 4:17-cr-00024-HFS   Document 34   Filed 03/06/18   Page 5 of 14

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives its right to challenge the initiation of the dismissed or additional charges against it if it breaches this agreement. The defendant expressly waives its right to assert a statute of limitations defense if the dismissed or additional charges are initiated against it following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against it following its breach of this plea agreement, it will not be allowed to withdraw its guilty plea.

**8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of its criminal activities. The defendant understands these disclosures are not limited to the count to which it has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9. Withdrawal of Plea.**  Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court.  In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible.  However, after the plea has been formally accepted by the Court, the defendant may withdraw its plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal.  The defendant understands that if the Court accepts its plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, it will not be permitted to withdraw its plea of guilty.

**10. Agreed Guidelines Applications.**  With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

> a. The Sentencing Guidelines do not bind the Court and are advisory in nature.  The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable."
>
> b. The applicable Guidelines Manual is the one that took effect on November 1, 2016.
>
> c. The defendant is a corporation, accordingly, U.S.S.G. § 8A1.1 *et. seq.* apply to this plea agreement.
>
> d. The parties agree that there are no identifiable victims, so restitution is not applicable; the defendant agrees to voluntarily dissolve on or before the date of sentencing so Part B, Subpart 1 does not apply, pursuant to U.S.S.G. § 8A1.2(a).
>
> e. The defendant corporation has ceased doing business, agreed to dissolve prior to sentencing and to pay the $400 special assessment at or before sentencing so probation or a fine are not necessary.
>
> f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does

7

not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw its plea of guilty.

g. The United States agrees not to seek an upward departure from the Guidelines or a sentence outside the Guidelines range, and defendant agrees to not seek a downward departure from the Guidelines or a sentence outside the Guidelines range. The agreement by the parties to not seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable."

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay.

i. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that it will make during its plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea

8

agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charges in the Indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that it has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until its guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against it;

    e. the right to compel or subpoena witnesses to appear on its behalf; and

    f. the right to remain silent at trial, in which case its silence may not be used against it.

The defendant understands that by pleading guilty, it waives or gives up those rights and that there will be no trial. The defendant further understands that if it pleads guilty, the Court may ask it, through an authorized representative, questions about the offense or offenses to which it pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, its answers may later be used against it in a prosecution for perjury or making a false statement. The defendant also understands it has pleaded guilty to a felony offense and, as a result, might be deprived of other rights.

**15. Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement it waives its right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

   b. The defendant expressly waives its right to appeal its sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal its sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**16. Financial Obligations.** By entering into this plea agreement, the defendant represents that it understands and agrees to the following financial obligations:

   a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Indictment which are to be dismissed and all other uncharged related criminal activity.

   b. The United States may use the Federal Debt Collection Procedures Act

and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

      c. The defendant will fully and truthfully disclose all assets and property in which it has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

      d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office.

      e. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $400 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of its fulfillment of this obligation at the time of sentencing.

      f. The defendant certifies that it has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that it will make no such transfers in the future.

      g. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17. <u>Waiver of FOIA Request</u>.** The defendant waives all of its rights, whether asserted

directly or by a representative, to request or receive, or to authorize any third party to request or

receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18. Waiver of Claim for Attorney's Fees.** The defendant waives all of its claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw its plea of guilty.

The defendant also understands and agrees that in the event it violates this plea agreement, all statements made by it to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by it before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against it in any and all criminal proceedings. The defendant waives any rights that it might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by it subsequent to this plea agreement.

**20. Defendant's Representations.**  The defendant acknowledges that it has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel.  The defendant acknowledges that it is satisfied with the assistance of counsel, and that counsel has fully advised it of its rights and obligations in connection with this plea agreement.  The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, its attorneys or any other party to induce it to enter its plea of guilty.

**21. No Undisclosed Terms.**  The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**22. <u>Standard of Interpretation</u>.**  The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings.  The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

                                                Timothy A. Garrison
                                                United States Attorney

Dated:   3/6/18                      *s/ James Curt Bohling*
                                                James Curt Bohling
                                                Assistant United States Attorney

       Patriot Company, Inc. and its principals (Corporation) have consulted with the Corporation's attorney and fully understand all of the Corporation's rights with respect to the offenses charged in the Indictment.  Further, the Corporation and its principals have consulted with the corporate attorney and fully understand the Corporation's rights with respect to the provisions of the Sentencing Guidelines.  The Corporation has read this plea agreement and carefully reviewed every part of it with the corporate attorney.  The Corporation understands this plea agreement and the Corporation voluntarily agrees to it.

Dated:   3/6/18                      *s/ Melanie S. Morgan*
                                                Melanie S. Morgan,
                                                Authorized Corporate Representative
                                                Patriot Company, Inc.
                                                Defendant

       I am defendant Patriot Company Inc.'s attorney.  I have fully explained to it its rights with respect to the offenses charged in the Indictment.  Further, I have reviewed with it the provisions of the Sentencing Guidelines which might apply in this case.  I have carefully reviewed every part of this plea agreement with it.  To my knowledge, Patriot Company Inc.'s decision to enter into this plea agreement is an informed and voluntary one.

Dated:   3/6/18                      *s/ Melanie S. Morgan*
                                                Melanie S. Morgan
                                                Attorney for Defendant